IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| COREY WILLIAMS, | : | Case No. 15-CV-337 |
| Plaintiff, | : | |
| v. | : | Judge Michael R. Barrett |
| DERRICK COLLINS, *et al.* | : | |
| Defendants. | : | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| | : | |

This matter is before the Court on the Motion for Summary Judgment filed by Defendants, Derrick Collins, Marianne Burgess, Maria Slone, Elizabeth Boughen, and Sheriff Richard K. Jones (Doc. No. 33), the Plaintiff's Response (Doc. No. 36) and the Defendants' Reply (Doc. No. 37). Plaintiff alleged that the Defendants have violated his Fourth and Fourteenth Amendment rights based upon an altercation that took place at the Butler County jail in Hamilton, Ohio. Plaintiff's complaint includes claims for excessive force and failure to intervene under 42 U.S.C. §1983. Plaintiff has made further claims for false imprisonment and battery under Ohio law.

Defendants assert that the claims arise under the Fourteenth Amendment rather than the Fourth Amendment because the Plaintiff was a pre-trial detainee. Under the applicable standards, Defendants claim that they are entitled to qualified immunity as to the Fourteenth

1

Amendment claims and are further immune from the state law claims. For the reasons that follow, Defendants' Motion for Summary Judgment will be **DENIED IN PART** and **GRANTED IN PART.**

I. BACKGROUND

A. FACTS

On May 24, 2014, Plaintiff Corey Williams (hereinafter referred to as "Williams"), was pulled over by a Hamilton, Ohio police officer for a traffic violation. Williams was then booked into the Butler County jail based upon the discovery of marijuana and drug paraphernalia in his vehicle. (Plaintiff's Complaint, Doc. No. 27, PageID 99; Williams Depo, PageID 130). It is not disputed that at the time he was booked into the jail, it was determined that Williams could be released on his own recognizance and the Defendants began to prepare the paperwork for him to be released. (Doc. No. 27, PageID 99). While Williams was in the process of completing the paperwork, he made a remark about Officer Collins's hairstyle, stating that he should fire his barber. (*Id*). Williams was training to become a licensed barber at the time. (*Id*). It is at this point that the parties' recollections and perceptions of the time in question diverge.

1. Testimony of Corey Williams

Williams testified that he was happy he was going to make bond and that while he was being processed he made a remark about Officer Collins's haircut. Williams stated to Collins that he had a line around his head and that he should fire his barber. (Williams Depo, PageID 130). Williams testified that "When I made that comment about Collins' haircut, he told me he would pull me over the counter and beat the fuck out of me." (*Id*. at PageID 132).

Within this time frame, Williams claims that Officer Collins told Officer Burgess to put him in a holding cell. (*Id*). Williams was informed that he was not going to be released, and at

2

that time, he testified that "they all came in, five of them, with black latex gloves" and told him to give them the paperwork he was holding. (*Id*). Williams had the paperwork folded behind his back and wanted to know why he was not being released. (*Id*). When he asked about the release, he claims that Officer Collins reached around Officer Burgess and punched him in the face. (*Id*). Williams claims he was punched in the face, fell back on a bench, ended up sprawled on the floor and was then turned over and tased. (*Id*. at PageID 132-4). He claims he was struck with prongs from the taser. (*Id*).

Williams continues that he was then placed in a restraint chair and never had an opportunity to tell anyone he was hurt, but did tell officers and anyone there that he was in pain. (*Id*). Williams claims that he did not physically wrestle with any Butler County employee and he was not argumentative. (*Id*). Williams specifies that he was hit all over, however mostly in the head, by Officer Collins while Officer Davenport held him down. (*Id.* at PageID 136). Williams testified that no female officer touched him. (*Id.* at PageID 134). He was eventually released shortly after 12:00 a.m. on May 25, 2014. About a week later, Williams had surgery to the left orbital zone of his left eye. (*Id.* at PageID 136-7).

2. Testimony of Sergeant Maria Slone

Sergeant Slone manages the corrections officers and maintains safety and security of the facility for the second shift. (Slone Depo., PageID 178). She supervises booking, intake and release. (*Id*). Sergeant Slone made the decision to release Plaintiff based upon his lower level offenses. (*Id*). However, while Plaintiff was completing the paperwork to be released, he became disruptive. (*Id.* at PageID 182). As a result, Sergeant Slone decided to revoke the OR bond to see if Williams would calm down and then continue with the release. (*Id*).

Officer Collins and Officer Burgess told Sergeant Slone that Plaintiff was being disruptive and would not give back the paperwork. (*Id*. at PageID 184-5). She saw Collins and Davenport go in to get the paperwork that Plaintiff had behind his back. (*Id.* at PageID 186). She could see Plaintiff back up against the back wall of the room and then lunge toward Officer Collins. (*Id*). The next thing she saw was Williams and Collins on the ground, and Davenport kneeling trying to get Plaintiff's hands behind his back. (*Id*).

Next, Sergeant Slone then went into the room and ordered Plaintiff to stop resisting and to put his hands behind his back twice. (*Id*. at PageID 188). She told him a third time and that if he did not comply, she would tase him. (*Id*). Sergeant Slone testified that he did not comply, so she tased him in the stun drive mode to his right shoulder blade area. (*Id)*. He was then cuffed and put in a restraint chair. (*Id*). Sergeant Slone testified that the times when she saw Williams in the restraint chair, she did not see any bruising and that he was checked multiple times over the two hours he was in the chair. (*Id*. at PageID 189). She further testified that she observed Officer Davenport strike Plaintiff with his fist and use balance displacement to attempt to gain control. (*Id*. at PageID 192).

3. Testimony of Officer Collins

Officer Collins testified that Williams caught his attention when Williams came back to booking to be released. (Collins Depo., PageID 246-7). Officer Collins stated that Williams was being argumentative and was angry about the process. (*Id*). Collins attempted to get the paperwork back from Williams, then he took a step and put his hands in a boxer pose and lunged toward him. (*Id*. at PageID 248-50). Williams then made a quick motion and put his hands behind his back with the paperwork. (*Id*). Officer Collins then employed the balance displacement technique to "assist" Williams to the bench. (*Id*). Williams was face down on the

4

bench, and his face, stomach, thighs, knees, feet and head made contact with the bench. (*Id*. at PageID 251-2). Williams then swung a leg off the bench, jerked his right hand away from Collins and they began to wrestle. (*Id*. at PageID 252). Officer Collins did not know where the paperwork was at that time, and Williams was still not listening or obeying the commands given by the officers. (*Id*).

Officer Collins testified that he then employed three to four closed hand strikes to the larger muscle groups, but they had no effect. (*Id*). It was at that point that Sergeant Slone administered the five second tase stun. (*Id*. at PageID 253). At that point Officer Collins was able to get Plaintiff's hands and handcuff him. (*Id*). Williams was next put in a restraint chair and moved to a holding cell. (*Id*. at PageID 254). He did not see any bruising or bleeding on Williams. (*Id*). Officer Collins testified that he did not strike Williams in the face. (*Id*).

4. Testimony of Officer Burgess

Officer Burgess testified that she first communicated with Williams when he was given his paperwork for release. (Burgess Depo., PageID 155). Williams was disruptive from the start, and argued about his money. (*Id*. at PageID 157). She did hear Williams tell Officer Collins that he needed to fire his barber. (*Id*). At that time, Sergeant Slone decided that Plaintiff needed time to cool off and would go back to the holding cell. (*Id*). Williams was asked to go to the holding cell and to return the paperwork. (*Id.* at PageID 158). Burgess asked him three times to return the paperwork, but he wadded it up and put it behind is back. (*Id*). Officer Collins then came into the holding cell and Williams lunged toward Officer Collins. (*Id*).

Officer Collins then took control of Williams, placed him on the bench with balance placement technique, then got him to the floor and attempted to roll him over to get his hands. (*Id*. at PageID 160). Officer Burgess testified that both Davenport and Collins were working to

5

control Williams, who was resisting, kicking and pulling away. (*Id*). Once Williams was on his stomach on the ground and his hands were underneath him, Officer Slone came in and tased him. (*Id*. at PageID 161). Officer Burgess testified that she saw Williams being struck in his sides and shoulders by Officers Davenport and Collins, but not to his face. (*Id.* at PageID 161). Once Williams was tased, he gave up his hands, was handcuffed and put in the restraint chair. (*Id*).

5. Testimony of Officer Boughen

Officer Boughen's testimony follows that of the other officers for all relevant purposes. She testified that when Williams came back down for the OR bond, he was uncooperative, disrespectful and would not release the paperwork despite the repeated requests for its return. (Boughen Depo., PageID 224). She also testified that she saw Williams lunge toward Officer Collins, that Collins employed balance displacement and took him to the bench, then to the floor and Officer Davenport assisted. (*Id*. at PageID 224-6). Sergeant Slone came in, advised that she had a taser and then deployed the taser in five second drive stun mode. (*Id*. at PageID 226). Officer Boughen testified that she did not touch him, that she did not recall seeing anyone strike him in the face, and did not see any injuries or bruising on Williams when he was in the restraint chair. (*Id*. at PageID 227).

**B. Procedural History**

Plaintiff Williams initiated this lawsuit by filing a complaint on May 21, 2015, (Doc. No. 2). On April 27, 2016, Plaintiff filed his First Amended Complaint. (Doc. No. 27). The named Defendants were Officer Derrick Collins, Officer Marianne Burgess, Sergeant Maria Slone and Officer Elizabeth Boughen in their individual capacities and Butler County Sheriff Richard K. Jones in his official capacity. Williams asserted the following claims for relief in his first amended complaint:

1. Excessive Force under 42 U.S.C. §1983 against Defendants Collins, Slone and Burgess;
2. Excessive Force – Failure to Intervene under 42 U.S.C. §1983 against Defendant Boughen;
3. Battery under Ohio law against Collins, Slone and Burgess individually and respondeat superior liability as to Richard K. Jones; and
4. False imprisonment against all Defendants individually and respondeat superior liability as to Richard K. Jones.
(Doc. No. 27).

On August 12, 2016, the Defendants filed a Motion for Summary Judgment (Doc. No. 33) to which Plaintiff replied on September 28, 2016. (Doc. No. 37). This case was originally assigned to the Honorable Sandra S. Beckwith. The matter was reassigned to the undersigned on January 3, 2017.

In the pending motion, the Defendants move for summary judgment on all of Plaintiff's claims. Plaintiff has conceded that statutory immunity applies to Defendant Richard K. Jones but otherwise opposes the Defendants' motion.

## II. SUMMARY JUDGMENT STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The process of evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well-settled. First, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *See LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir. 1993). This burden may be satisfied, however, by the movant "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has

7

no evidence to support an essential element of his or her case." *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the opposing party must submit evidence in support of any material element of the claim or defense at issue in the motion on which it would bear the burden of proof at trial. *Celotex,* 477 U.S. at 331–32. As "the requirement [of the Rule] is that there be no *genuine* issue of *material* fact," the Supreme Court has made clear that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). Ancillary factual disputes, those "that are irrelevant or unnecessary[,]will not be counted." (*Id.*) Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." (*Id.* at 252.) In other words, the opposing party must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir. 1993) (applying *Anderson*, 477 U.S. at 249–50; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

At this summary judgment stage, it is not the court's role "to weigh the evidence and determine the truth of the matter but [rather] to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. In so doing, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." (*Id.* at 255)(citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59 (1970) and *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Adherence to this standard, however, does not permit the Court to assess the

8

credibility of witnesses. *See Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994) (citing *Anderson*, 477 U.S. at 255)).

### III. ANALYSIS

#### A. Arguments of the Parties

Defendants claim that the actions of Officers Collins, Burgess and Slone were objectively reasonable and in good faith, so they are protected from any liability under 42 U.S.C. § 1983 liability by qualified immunity. Defendants further contend that there is no evidence against Officer Boughen besides her mere presence at the Butler County Jail, which is insufficient to establish liability. Additionally, Defendants assert that they are safeguarded by Ohio's statutory immunity as to the state law claims for excessive force/battery and false imprisonment.

Plaintiff argues that the facts support an inference that the actions of Defendants Collins and Slone violated his constitutional rights because they sought to sadistically and maliciously injure him while he was a pre-trial detainee. Plaintiff further claims that Defendants Burgess and Boughen are not shielded from liability because they were present and had the opportunity and means to intervene and prevent the harm from occurring. Plaintiff concedes that statutory immunity applies to Sheriff Richard K. Johnson and he is shielded from liability

#### B. Qualified Immunity for Claims of §1983 Excessive Force Violations

Defendants point out, and Plaintiff agrees, that because Plaintiff was a pre-trial detainee at the time of the complained of conduct, his excessive force claims arise under the due process clause of the Fourteenth Amendment pursuant to *Griffen v. Hardrick*, 604 F.3d 949 (6th Cir. 2010), and not the Fourth Amendment as was stated in the pleadings. (Doc. No. 33 at PageID 280 and Doc. No. 36 at PageID 304).

9

"Every person who, under the color of . . . [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." 42 U.S.C. §1983. "Qualified immunity," however, shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kid*, ___ U.S. ___, 131 S.Ct. 2074, 2080 (2011); *Coley v. Lucas Cnty,* 799 F. 3d 530, 537 (6th Cir. 2014). This doctrine is a balancing of interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

It is not disputed and it is clearly established that "individuals have a constitutional right to be free from excessive force . . . ." *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006). To determine whether the force used by law enforcement as to pre-trial detainees is excessive, the Plaintiff must be able to establish that the force purposely or knowingly used against him was objectively unreasonable. *Coley v. Lucas Cnty*, 799 F.3d 530, 538 (6th Cir.2015)(citing *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015)). This is a highly factually dependent inquiry and takes into account the perspective of the officer at the time, rather than 20/20 hindsight. (*Id*). The inquiry should also account for the interests of the government to manage the facility where the individual is being detained. (*Id*). Moreover, pre-trial detainees cannot properly be subjected to force for purposes of punishment because "they cannot be punished at all." (*Id*). (citing *Kingsley*, 135 S.Ct. at 2475 and quoting *Graham* 490 U.S. at 395 n. 10).

The conduct of each individual defendant must be examined separately when determining whether the defendant violated the constitution and whether the defendant nonetheless is entitled to qualified immunity. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." (*Id.*) An officer may also be held liable for excessive force – under a failure to intervene theory – when he (1) was present, (2) had reason to know of the force being used, and (3) had an opportunity to intervene and the means to prevent the harm from occurring. (*Id*).; *Cole v. City of Dearborn,* 448 Fed.Appx. 571, 577 (6th Cir. 2011)(citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

According to the facts as alleged, the Plaintiff has satisfied the clearly established prong of the excessive force inquiry; that all individuals have a right to be free from such force. The next prong, whether the named defendant official violated that right, depends upon the reasonableness inquiry, which is based upon the facts viewed in the Plaintiff's favor.

Although the conduct of each individual defendants is to be evaluated separately, the significant facts are applicable to all officers against whom excessive force and failure to intervene claims are made; Collins, Slone, Burgess and Boughen. The dispute comes down to whether the Plaintiff was disruptive, argumentative, and non-compliant during the interaction relating to his paperwork, and whether he lunged toward Officer Collins. This is the conduct the Defendants claim support their actions as reasonable. If Plaintiff behaved in the manner they describe, Defendants argue that their actions were reasonable in their actions to detain him and the force used was reasonable.

Plaintiff, however, claims that he made a remark about a haircut and was angry and confused about the change in the bond decision, but that he was not uncooperative or disruptive. He claims he did not lunge toward Officer Collins, but that Officer Collins verbally threatened him. Plaintiff further claims that at that point, all four officers (and one other who is not named in this lawsuit) came after him. Then Collins punched him in the face and other body regions, took him to the bench and then to the floor. While Plaintiff was on the floor, Officer Slone came in and tased him. While Defendant Slone claims that she tased Plaintiff after entering the cell, and finding Defendant Collins in potential danger because Plaintiff was "wrestl[ing]" with him (Doc. 33, PAGERID# 288), Defendant Slone was present and able to observe Plaintiff's behavior leading up to the physical contact with Defendant Collins. All the while, Officers Burgess and Boughen were present and did nothing to stop the alleged excessive force.

### 1. Defendants Collins and Slone

In regard to Officer Collins and Sergeant Slone, these officers had actual physical contact with the Plaintiff. When the facts are viewed in a light most favorable to the Plaintiff, there exist genuine and material factual disputes as to whether and to what extent the Plaintiff was disruptive or the actions of the officers were excessive, unreasonable and unconstitutional.[1]

---

[1] Defendant Slones' reliance on *Sheffey* is misplaced. There, a defendant who deployed his taser was entitled to qualified immunity because the plaintiff was armed and trying to flee, and thus the defendant "reasonably believed himself and others to be in danger of an armed Mr. Hughes as he approached and attempted to evade arrest." *Sheffey v. City of Covington*, 564 Fed. Appx. 783, 791 (6th Cir. 2014). Here, factual questions pervade with respect to what actually motivated Defendant Slone's use of her taser. This is not a situation where the defendant comes in as backup, without knowledge of what transpired beforehand and must make a snap judgment to use his or her taser; rather, Defendant Slone concedes she was present throughout Plaintiff's interaction with Defendant Collins. Slones Depo., pp. 40-41. Thus, the reasonableness of any use of force comes down to whether Plaintiff was compliant during the relevant time period, which is contested.

Therefore, Williams has met his burden to defeat the motion for summary judgement as to Officers Slone and Collins on the §1983 excessive force claims.[2]

### 2. Defendants Burgess and Boughen

In regard to Officer Burgess and Officer Boughen, Plaintiff appears to assert failure to intervene claims against both of them. As for Officer Burgess, Plaintiff includes her in his count of federal excessive force, but in the response to the motion for summary judgment includes her in his claims of failure to intervene. However, he does not name Officer Burgess in the complaint in the failure to intervene count. (Doc. No. 27, PageID 101). Thus, the only failure to intervene claim properly pending at this time is against Defendant Boughen. See n. 2, supra.

When a plaintiff pursues a failure to intervene theory, it is a plaintiff's burden to show that the defendant owed the plaintiff a duty of care. In other words, plaintiffs must show that the defendants "observed or had reason to know that excessive force would be or was being used" *and* "had both the opportunity and the means to prevent the harm from occurring." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. Ohio 2013). Here, Plaintiff only argues that Officer Boughen knew that "Collins had just been irritated by Williams' comment and knew of his use of force history." (Doc. 36, PAGEID# 306). Plaintiff does not address at all whether Defendant Boughen had an opportunity to intervene, and thus has not met his burden to defeat the Defendants' motion for summary judgement on the failure to intervene claim.

---

[2] In his complaint, Plaintiff asserted an excessive force claim against Defendant Burgess, but failed to address it in his opposition papers. Plaintiff thus failed to sustain his burden in showing a genuine dispute of material fact for trial as to Defendant Burgess on the excessive force claim. Furthermore, Plaintiff cannot simply change the claim to failure to intervene in his briefing. *Desparois v. Perrysburg Exempted Village School District*, 455 Fed.Appx. 659, 666 (6th Cir. 2012). Accordingly, Defendant Burgess is entitled to summary judgment on Plaintiff's Section 1983 claim.

C.	**State Law Claims for Excessive Force and Battery**

In his summary judgment opposition, Plaintiff argues that – because Defendant Collins struck him in the face, and Defendant Slone's use of the taser "was done with malicious purpose"— "[b]oth should be held liable for the tort of battery."  (Doc. 36; PAGEID# 307).  However, Plaintiff admitted in his deposition that Defendants Burgess and Boughen never made contact with him, and fails to include them in his battery analysis in his summary judgment opposition.

Ohio revised code §2744.03(A)(6) establishes that where an officer's actions are within the course of their official duties, the officer is immune from liability, subject to limited exceptions.  "If an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery . . . ." *D'Agastino v. Warren*, 75 Fed.Appx. 990, 995 (6th Cir. 2003)(citing *Schweder v. Baratko*, 103 Ohio App. 399, 403; 143 N.E.2d 486 (Ohio App. 1957.))  To prevail, a plaintiff must prove that the officers acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code 2744.03(A)(6)(b).  The Sixth Circuit has held that in the context of excessive force claims, state law claims for assault and battery "rise and fall" with the federal excessive force claims.  *D'Agastino,* 75 Fed. Appx. 995.

Here, Plaintiff has met his burden of showing that Defendants Collins and Slone are not entitled to qualified immunity for their use of excessive force under federal law, so too has he met his burden under state law: "Facts in this record are sufficiently in dispute to be required to be submitted to a jury.  It is up to a jury to decide what exactly happened on the evening in question," and then decide whether to hold the officers liable for Plaintiff's injuries. (*Id*).  However, to the extent that a battery claim is asserted against any other Defendant, the claim is dismissed.

**G.      State Law Claims for False Imprisonment – False Arrest**

Defendants move for summary judgment on what Plaintiff has labeled as false imprisonment. Plaintiff's theory of liability is that Defendants maliciously held Plaintiff "after providing an O.R. bond to him." (Doc. 36, PAGEID# 308). However, Plaintiff appears to have erroneously confused or combined false imprisonment and false arrest, which are distinct torts under Ohio law. A false arrest is the unlawful deprivation of liberty by an authority with arrest powers, while false imprisonment is an unlawful detention by a private party. *Burr v. Burns*, 439 F. Supp.2d 779 S.D. Ohio, Western Division (July 7, 2006)(citing *Rogers v. Barbera*, 170 Ohio St. 241, 243, 164 N.E.2d 162 (Ohio 1960)). In this matter, therefore, if there is a claim, it would be for false arrest.

The statute governing "release on own recognizance" in Ohio states: "When from all the circumstances the court is of the opinion that the accused will appear as required, either before or after conviction, the accused may be released on his own recognizance. A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in section 2937.99 of the Revised Code." Ohio Rev. Code. § 2937.29. Plaintiff has not adequately responded to Defendants' motion with citations to disputed facts that – if construed in his favor – support that he was *entitled* to release on his own recognizance at the time in question. Rather, the governing statute appears to be discretionary in nature, and Plaintiff has failed to establish a factual record that suggests that any statute or County policy was violated when Defendants failed to release Plaintiff on his own recognizance. Therefore, Plaintiff has failed to meet his burden to show any issue of fact as to false arrest that – if construed in his favor – entitles his claim to proceed to a jury

IV. CONCLUSION

The Court, having reviewed the parties' pleadings and in accordance with the reasons stated herein, hereby **DENIES IN PART** and **GRANTS IN PART** the Defendants' motion for summary judgment as follows:

1. Defendants' motion is **DENIED** as to the claims of excessive force in violation of 42 U.S.C. §1983, as to Defendants Collins and Slone;

2. Defendants' motion is **DENIED** as to the state law claims of excessive force and battery, as to Defendants Collins and Slone;

3. Defendants' motion is **GRANTED** as to the claims of excessive force in violation of 42 U.S.C. §1983, as well as the state law claims of excessive force/ battery, as to Defendant Burgess;

4. Defendants' motion is **GRANTED** as to the claims of failure to intervene in violation of 42 U.S.C. §1983, as to Defendants Burgess and Boughen;

5. Defendants' motion is **GRANTED** as to claims for false arrest or false imprisonment; and

6. Defendants' motion is **GRANTED** as to any claims against Sheriff Richard K. Jones.

IT IS SO ORDERED.

    /s/ Michael R. Barrett
**Judge Michael R. Barrett**
**United States District Court**